Giovanni Javier SANZ, Represented by Guadalupe Sanz and Raul Velez; Guadalupe Sanz: Raul Velez; Fidel Sanz, Plaintiffs,

v.

COMMONWEALTH OF PUERTO RICO; Jaime Pivera Dueño, Secretary of Health of the Commonwealth of Puerto Rico, Heriberto Acosta, Director of the Psychiatric Hospital of the Commonwealth of Puerto Rico; Gloria Quiñones and Ramonita Carrasquillo, Employees of the Psychiatric Hospital of the Commonwealth of Puerto Rico; John Doe and Jane Doe, Employees of the Psychiatric Hospital of the Commonwealth of Puerto Rico; Individually and in their official capacity; their agents, employees and successors in office, Defendants.

Civ. 81–0559.

United States District Court,
D. Puerto Rico.

April 6, 1982.

Pedro J. Varela, Hato Rey, P. R., for plaintiffs.

Howard Charles, Dept. of Justice, Commonwealth of P. R., San Juan, P. R., for defendants.

## MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

This is an action brought by plaintiffs, the child and only heir of Isabel Sanz-Cordero, his granduncles and grandparents pursuant to 42 U.S.C. Secs. 1981, 1983, 1985, 1986 and 1988 against the Commonwealth of Puerto Rico and certain of its officers for alleged deprivations of the First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth amendments to the Constitution of the United States. Defendants answered the complaint and on July 16, 1981 filed a motion for judgment on the pleadings seeking dismissal of the complaint as to the Commonwealth of Puerto Rico as it is barred by the Eleventh Amendment of the United States Constitution, and as to all other defendants since it fails to state a cause of action under any of the cited civil rights statutes, stating only an action under the local statute for negligence of public officials. 32 *LPRA* Sec. 3077 *et seq.* Plaintiffs opposed this motion and instead asked the Court to issue partial summary judgment as to certain facts enumerated in their motion.

For purposes of a motion to dismiss under Rule 12(b)(6) the factual allegations of the complaint must be taken as true. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980), *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Melo-Tone Vending, Inc. v. United States*, 666 F.2d 687 (1st Cir., 1981). The complaint must be liberally construed in the light most favorable to plaintiff. *Conley v. Gibson*, 355 U.S., at 45–48, 78 S.Ct., at 101–03.

Plaintiffs allege in their complaint that they are the only child, the uncles, and father of Isabel Sanz who was committed to the Psychiatric Hospital of the Commonwealth of Puerto Rico in April of 1977 by order of the Superior Court of Puerto Rico, San Juan Section, upon request of the Department of Social Services of the Commonwealth of Puerto Rico. Plaintiffs complain that while committed to said institution their decedent was receiving inadequate treatment consisting of pills and very limited therapy sessions, without receiving any adequate care, education, rehabilitation nor a proper, humane physical and psychological environment. The complaint states that during the time she was committed to the Psychiatric Hospital plaintiffs' decedent had sexual intercourse with other mental patients and became pregnant; on September 29, 1980 plaintiff Giovanni Javier Sanz was born to Isabel Sanz. The complaint goes on to state that during the evening of October 5, 1980 a fire commenced in the room where plaintiffs' decedent had been secluded in solitary confinement and employees of the hospital were unable to open the padlock of decedent's room because they could not find the key. The fire was eventually put out but two weeks later Isabel Sanz died allegedly from the burns she had received.

A liberal interpretation of these facts in light of the jurisprudence related to this matter leads to the conclusion that plaintiffs have stated a claim under 42 U.S.C. Sec. 1983 for violations of decedent's due process rights. The complaint states that Isabel Sanz, a mentally deceased person, was involuntary confined to a psychiatric institution, that she was not receiving adequate treatment for her condition and that she was not adequately cared for nor provided a "proper, humane, physical and psychological environment." It further states that during her commitment there the deceased had sexual intercourse with other patients and became pregnant, a reasonable inference is that this was the result of lack of attention on the part of the medical personnel. It is alleged that Isabel Sanz

was secluded in a room which was locked with a padlock, that as a result of a fire which commenced in said room she received burns and that she burned to death in that room because the hospital employees could not find the key to the padlock. This grossly negligent act, if proven, coupled with the fact that the deceased was deprived of a "residuum" of liberty [1] "could cross the line from a tort to a [section] 1983 case...." *Harper v. Cserr*, 544 F.2d 1121, 1124 (1st Cir. 1976). Although the Court of Appeals for the First Circuit has only considered one aspect of the rights of involuntary mental patients it has recognized that "[t]hese mental patients are persons who ... have a 'right, under the Fourteenth Amendment, to be secure in [their] life and person while confined under state authority.'" *Rogers v. Okin*, 634 F.2d 650, 655 (1st Cir. 1980) cert. granted 451 U.S. 906, 101 S.Ct. 1972, 68 L.Ed.2d 293, quoting *Harper v. Cserr*, 544 F.2d at 1123, quoting *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974). In *Harper*, a case of a voluntary mental patient at the Medfield State Hospital in Massachusetts who hung herself after prior suicide attempts the Court of Appeals stated:

"A prisoner or involuntary mental patient has no alternative to enduring whatever conditions the state provides, if his captors allow him to be beaten or consign him to inhuman conditions, it seems rational to speak not only of a 'tort' but an invasion of civil rights by his captors."

Moreover, the Court cited with approval other courts decisions recognizing a right to treatment of persons committed by the state to mental institutions. *Id.* at 1122–1123.

In *Rogers v. Okin*, the Court of Appeals had occasion to review the right of involuntary mental patients to be "left free by the state to decide for [themselves] whether to submit to the serious and potential harmful medical treatment that is represented by the administration of antipsychotic drugs." (footnote omitted), 634 F.2d, at 653. The Court concluded that the Due Process Clause of the Fourteenth Amendment protects this right and that only in emergency situations as defined by the Court, and after a determination of incompetency may these patients be forcibly administered potentially harmful drugs. The Court, however, did not address the issue whether the seclusion practices employed at the hospital were unconstitutional. *Id.*, at 662.

The Third Circuit Court of Appeals has had the opportunity to review other aspects in the conditions of mentally ill persons institutionalized by the state. In *Romeo v. Youngberg*, 644 F.2d 147 (3rd Cir. 1980) cert. granted 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 838, that Court concluded that "the Fourteenth Amendment's prohibition of state deprivation of life, liberty or property without due process of law," rather than the Eighth Amendment, governed judicial review of the conditions of civil commitment of mentally deceased persons. At page 157 the Court stated:

The confinement of an individual to an institution for either the mentally ill or mentally retarded entails a 'massive curtailment of liberty.' *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972). In consequence it is circumscribed by due process protections. *Addington v. Texas*, 441 U.S. 418, at 425, 99 S.Ct., [1804] at 1809 [60 L.Ed.2d 323]. And once inside the institution an individual's liberty interest is not summarily extinguished. Rather, those aspects of personal autonomy recognized from the time of Blackstone—the power of locomotion without restraint and the right to personal security—as well as the right to freedom from punishment, require continued respect. These fundamental liberties may be legitimately encroached upon only when justified by an overriding, nonpunitive state interest related to the reasons for confinement. (Footnote omitted)

---

1. See: *Romeo v. Youngberg*, 644 F.2d 147, 159 (3rd Cir. 1981), cert. granted 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 838.

For all of the above it is concluded that the complaint filed in this case does not fail to state a federal cause of action and the motion to dismiss is DENIED.

As to defendants' contention that the Eleventh Amendment to the Constitution of the United States bars this suit against the Commonwealth of Puerto Rico, the cases cited by plaintiffs in their opposition to defendants' motion do not support their position. Those cases merely hold that the Eleventh Amendment "does not extend to counties or municipalities or agencies thereof." *Highfield Water Co. v. Public Service Commission*, 488 F.Supp. 1176, 1194 (D.Md.1980) (quoting from *Patterson v. Ramsay*, 413 F.Supp. 523, 529 (D.Md.1976), aff'd. 552 F.2d 117 (4th Cir. 1977). In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court had overruled previous "stare decisis" and held that municipalities and other local government units may be "persons" within the ambit of 42 U.S.C. Sec. 1983. The Supreme Court has *not* held that section 1983 applies to the states or to local government units which are considered part of the state for Eleventh Amendment purposes. On the contrary, the Eleventh Amendment remains a bar against suits brought against the state unless it has waived this immunity. See: *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This concept applies to the Commonwealth of Puerto Rico which has not consented to be sued in the federal courts. *Salkin v. Commonwealth of Puerto Rico*, 408 F.2d 682 (1st Cir. 1969). Plaintiffs contend that by entering a stipulation in the case of *Navarro v. Hernández Colón*, 74–1301, the Commonwealth waived its immunity from suit. Suffice it to say that the Commonwealth was not a party to that suit where only officers for the Commonwealth were sued and the stipulation referred to was signed by the Secretary and Assistant Secretary of Health of the Commonwealth of Puerto Rico. The Secretary of Health is a defendant in the instant suit and as to him no issue of Eleventh Amendment immunity has been raised.

For the reasons stated, the motion for judgment on the pleadings filed by the defendants is hereby DENIED. The complaint is DISMISSED as to the Commonwealth of Puerto Rico.

SO ORDERED.