802 So.2d 1113 (2001)
Gloria PULLEN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC00-1482.
Supreme Court of Florida.
September 13, 2001.
Rehearing Denied November 15, 2001.
*1114 Nancy A. Daniels, Public Defender, and P. Douglas Brinkmeyer, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Charlie McCoy, Assistant Attorney General, Tallahassee, FL, for Respondent.
Julianne M. Holt, Public Defender, and Marcia Perlin, Assistant Public Defender, Thirteenth Judicial Circuit, Tampa, FL, for Florida Public Defender Association, Inc., Amicus Curiae.
HARDING, J.
We have for review a decision of a district court of appeal that affects a class of state or constitutional officers. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
Gloria Pullen appealed an order from the Division of Administrative Hearings authorizing her continued involuntary civil commitment under Florida's Baker Act. See §§ 394.451-394.4789, Fla. Stat. (2000). Pullen's appointed counsel from the public defender's office filed an Anders[1] brief, stating that he could discern no reversible error in the proceedings below. Despite being given the opportunity to file her own pro se brief, Pullen did not do so. The State filed a motion to dismiss the appeal, arguing that the Anders procedure does not apply to civil commitment proceedings. The First District Court of Appeal agreed and dismissed Pullen's appeal with a written opinion. See Pullen v. State, 764 So.2d 704 (Fla. 1st DCA 2000).
The district court concluded that because Anders procedures are grounded in the Sixth Amendment right to counsel in criminal prosecutions while Baker Act proceedings are civil in nature and the right to counsel in such proceedings arises from the due process clause, Anders is inapplicable to appeals from involuntary civil commitment orders. The First District Court noted that the Fourth District Court had reached the same conclusion as to the inapplicability of Anders procedures in termination of parental rights (TPR) proceedings. See Ostrum v. Dep't of Health & Rehabilitative Servs., 663 So.2d 1359 (Fla. 4th DCA 1995). The First District Court adopted the procedures outlined in Ostrum, i.e., where counsel conducts a conscientious review of the record and can find no meritorious grounds on which to appeal, counsel can move to withdraw on that basis and the court will give the pro se appellant an opportunity to file a brief; where the pro se appellant fails to do so, the case will be dismissed for failure to prosecute. See Pullen, 764 So.2d at 705. *1115 Based on this procedure, the district court dismissed Pullen's appeal. See id.
Pullen sought review by this Court on two grounds: (1) the decision below expressly construes the due process and right to counsel provisions of the Florida and United States Constitutions; and (2) the decision expressly affects all public defenders who routinely represent indigent patients in Baker Act proceedings. See art. V, § 3(b)(3), Fla. Const. The Court granted review and heard oral argument from the parties in June 2001.
In Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the United States Supreme Court addressed the duty of a court-appointed appellate counsel to prosecute a first appeal when the attorney has conscientiously determined that there is no merit to the indigent's appeal. The Supreme Court held that the procedure in such circumstances must ensure that the indigent defendant is furnished with counsel acting in the role of an advocate and that the appeal will be given the full consideration and resolution of the matter as is received when counsel is acting in that capacity. See id. at 743, 87 S.Ct. 1396. The Supreme Court concluded that a no-merit letter from counsel to the court does not suffice. Instead, the Supreme Court outlined the following procedure for appointed counsel to follow: if, after a conscientious examination of the case, counsel concludes that the case is wholly frivolous, counsel may request permission to withdraw; however, that request must be accompanied by a brief referring to anything in the record that might arguably support the appeal and a copy of the brief should be furnished to the indigent defendant to permit him or her to raise any points he chooses; the court then makes a full examination of the proceedings to determine whether the case is wholly frivolous; if so, it may grant counsel permission to withdraw and either dismiss the case or proceed to a decision on the merits; if the appeal is not found frivolous, the court must provide the indigent with counsel to argue the appeal. See id. at 744, 87 S.Ct. 1396; see also In re Anders Briefs, 581 So.2d 149, 151 (Fla. 1991) (explaining Anders procedure); State v. Wooden, 246 So.2d 755, 757-58 (Fla.1971) (stating that court-appointed counsel must follow Anders procedure in order to withdraw from direct appeal which he believes to be without merit).
In a recent opinion, the Supreme Court explained that the procedure outlined in Anders is not mandatory upon the states. See Smith v. Robbins, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (holding that the Anders procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals). The Supreme Court explained that states may craft variations of the Anders procedure "so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." Id. at 276-77, 120 S.Ct. 746. In Robbins, the Supreme Court concluded that California's Wende[2] procedure, *1116 which diverged from the Anders procedure, meets this standard. See id. at 279, 120 S.Ct. 746. In making this determination, the Court noted four ways in which alternative procedures have been judged inadequate: (1) if the procedure does not require either counsel or the appellate court to determine that the appeal is frivolous, but merely that the defendant is unlikely to prevail on appeal; (2) if the procedure permits an appellate court to allow counsel to withdraw and thereafter decide the appeal without appointing new counsel; (3) if the procedure permits counsel to file a no-merit letter stating only the "bare conclusion" that the appeal has no merit; and (4) if the procedure only provides for one tier of review. See id. at 761-62.
Thus, while the Supreme Court will permit variations on Anders in the criminal context, the procedures still must protect the defendant's right to appellate counsel. In a criminal context, a "no-merit" letter and withdrawal, such as the procedure used in the instant case, would clearly not be sufficient. See id.
Thus, the real issue here is what procedure is required in the context of a civil appeal. The process to which an individual is entitled "depends on the extent to which [the] individual will be `condemned to suffer grievous loss.' The question is not merely the `weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the `liberty or property' language of the Fourteenth Amendment." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (addressing the applicability of due process to parole revocation proceedings).
Clearly, an individual who faces involuntary commitment to a mental health facility has a liberty interest at stake. Accordingly, this Court has held that "[t]he subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process. By significant stages we mean all judicial proceedings and any other official proceeding at which a decision is, or can be, made which may result in a detrimental change to the conditions of the subject's liberty." In re Beverly, 342 So.2d 481, 489 (Fla. 1977) (citation omitted); accord Jones v. State, 611 So.2d 577, 579 (Fla. 1st DCA 1992).
In reaching the decision in the instant case, the district court relied upon the decision of the Fourth District Court in Ostrum, which involved an appeal following the termination of parental rights. See 663 So.2d at 1360. After Ostrum's attorney filed a motion to withdraw accompanied by an Anders brief, the Department of Health and Rehabilitative Services filed a motion to dismiss the appeal based upon the Anders brief and the court's policy of expeditiously resolving cases involving the interests of children. See id. at 1361. The Fourth District Court granted the attorney's motion to withdraw and summarily affirmed the termination of parental rights order. See id. at 1361-62. The district court explained that the Anders procedures do not apply to appeals from termination *1117 of parental rights proceedings for the following reasons: (1) the right to counsel in Anders is based on the Sixth Amendment right to counsel in criminal proceedings, while the right to counsel in civil TPR proceedings is derived from the constitutional guarantee of due process; (2) applying the full panoply of Anders procedures would delay proceedings to determine the future of the children who are the subject of the TPR proceedings; (3) Anders requires the appellate court to leave its neutral role and serve as advocate for the party whose counsel seeks to withdraw; and (4) the appellant can file a pro se brief after counsel files the motion to withdraw. See id. at 1361.
Citing the first reason in Ostrum, the district court in the instant case concluded that Anders is not applicable to Baker Act appeals because they are not criminal in nature and the right of counsel in such proceedings is derived from the constitutional right to due process rather than the Sixth Amendment right to counsel protected by Anders. See Pullen, 764 So.2d at 705. The district court adopted the Ostrum procedure in appeals from involuntary civil commitments under the Baker Act. See id. Thus, under the procedure adopted by the Pullen court, counsel may move to withdraw on the basis that he or she has conducted a conscientious review of the record and found no meritorious grounds on which to appeal; the appellate court need not conduct an independent review of the record; and the appellant will be given an opportunity to file a pro se brief. See id.
While Anders involved an indigent criminal defendant, the United States Supreme Court expressed an overriding concern for "substantial equality and fair process" in the appellate process. Anders, 386 U.S. at 744, 87 S.Ct. 1396. The Supreme Court noted that a long line of cases have addressed "discrimination against the indigent defendant on his first appeal" and concluded that "equal justice was not afforded an indigent appellant where the nature of the review `depends on the amount of money he has.'" Id. at 741, 87 S.Ct. 1396. Additionally, as the Supreme Court explained in Robbins, the line of cases dealing with an indigent's right to appellate counsel derive support from both the equal protection and due process clauses, which "as a practical matter,... largely converge to require that a State's procedure `afford adequate and effective appellate review to indigent defendants. A State's procedure provides such review so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal.'" Robbins, 528 U.S. at 276-77, 120 S.Ct. 746 (citation omitted). Furthermore, in civil proceedings where the "individual interests at stake ... are both `particularly important' and `more substantial than mere loss of money,'" due process places a higher burden on the state. Santosky v. Kramer. 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (termination of parental rights); see also Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (involuntary commitment); Woodby v. INS, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943) (denaturalization). As this Court has explained, "[t]he deprivation of liberty which results from confinement under a state's involuntary commitment law has been termed a `massive curtailment of liberty.'" Shuman v. State, 358 So.2d 1333, 1335 (Fla.1978) (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972)). "Those whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are *1118 those incarcerated in our correctional institutions." Id. As the Supreme Court warned in Anders, "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae." 386 U.S. at 744, 87 S.Ct. 1396.
The United States Supreme Court has not addressed the applicability of Anders to those civil proceedings in which a state has determined that an indigent party is entitled to appointed appellate counsel. While the federal Constitution does not require the states to create appellate review, see Robbins, 528 U.S. at 270 n. 5, 120 S.Ct. 746, constitutional constraints are imposed on the state when it chooses to do so. See id. at 270, 120 S.Ct. 746. Neither this Court nor the United States Supreme Court has addressed the applicability of the Anders procedures to civil proceedings such as these, i.e., where the "individual interests at stake ... are both `particularly important' and `more substantial than mere loss of money.'" Santosky v. Kramer, 455 U.S. at 756, 102 S.Ct. 1388. In Florida, several district courts have addressed this issue and concluded that Anders does not apply to appeals in various proceedings where the right to counsel arises from the due process clause. See, e.g., Ostrum v. Dep't of Health & Rehabilitative Servs., 663 So.2d 1359 (Fla. 4th DCA 1995) (termination of parental rights); Jimenez v. Dep't of Health & Rehabilitative Servs., 669 So.2d 340 (Fla. 3d DCA 1996) (same); In re J.A., 693 So.2d 723 (Fla. 5th DCA 1997) (same); In re K.W., 779 So.2d 292 (Fla. 2d DCA 1998) (same); Gantt v. State, 714 So.2d 1116 (Fla. 4th DCA 1998) (noncapital postconviction proceeding where court exercised discretion to appoint public defender); Pullen v. State, 764 So.2d 704 (Fla. 1st DCA 2000) (involuntary civil commitment).
Other states that have addressed the application of Anders to civil proceedings have come to varying conclusions. Some have held that Anders is applicable to termination of parental rights or similar proceedings. See J.K. v. Lee County Dep't of Human Res., 668 So.2d 813 (Ala.Civ.App. 1995) (juvenile dependency proceeding); In re Keller, 138 Ill.App.3d 746, 93 Ill.Dec. 190, 486 N.E.2d 291 (1985); In re Christopher B., No. L99-1065, 2000 WL 281739 (Ohio Ct.App. Mar. 17, 2000); In re D.C. & L.C., 963 P.2d 761 (Utah Ct.App.1998). Others have not applied Anders to such proceedings. See Denise H. v. Arizona Dep't of Econ. Sec., 193 Ariz. 257, 972 P.2d 241 (Ct.App.1998); In re Sade C., 13 Cal.4th 952, 55 Cal.Rptr.2d 771, 920 P.2d 716 (1996); In re Harrison, 136 N.C.App. 831, 526 S.E.2d 502 (2000). Some states have applied Anders to involuntary civil commitment proceedings. See In re McQueen, 145 Ill.App.3d 148, 99 Ill.Dec. 63, 495 N.E.2d 128 (1986) (applying to involuntary civil commitment); In re E.M., No. 03-96-00703-CV, 1997 WL 217186 (Tex.App. May 1, 1997) (applying Anders analysis by analogy to involuntary civil commitment without holding that it is necessary); Jeffrey M. v. Milwaukee County, 185 Wis.2d 712, 520 N.W.2d 112 (Ct.App. 1994) (applying to involuntary civil commitment). Other states have not. See In re Leon G., 26 P.3d 481, (Ariz.2001) (finding Anders not applicable to involuntary commitment under sexually violent predator act); In re Richard A., 771 A.2d 572 (N.H.2001) (not applying state alternative to Anders procedure in involuntary commitment proceedings).
In most cases where Anders has not been extended to civil proceedings, the courts have noted that Anders derives from the constitutional right to counsel in *1119 criminal proceedings. See, e.g., In re Leon G., 26 P.3d at 483-84, ("The right to full review of the record on appeal when appointed counsel files an Anders brief, attached as it is to the Sixth Amendment right to counsel in criminal cases, does not apply in civil proceedings."); Denise H., 972 P.2d at 243 ("The right to file an Anders brief derives from the Sixth Amendment right to counsel, which applies to persons `accused' in `criminal prosecutions.'"); County of Kern v. Dillier, 69 Cal.App.4th 1412, 82 Cal.Rptr.2d 318, 322 (1999) (stating that "Anders's `prophylactic' procedures are designed solely to protect the indigent criminal defendant's right... to the assistance of appellate counsel appointed by the state" and thus are not applicable to termination of parental rights proceedings); In re Richard A., 771 A.2d at 576 (holding that New Hampshire's alternative to Anders procedures, which arc required in criminal cases, do not apply to an involuntary civil commitment case because individuals subject to civil commitment "are not entitled to the same level of due process as individuals subject to incarceration for criminal wrongdoing"). Conversely, those courts that have applied Anders-type procedures to civil proceedings have focused on the similarities between the proceedings and the rights at issue. See, e.g., In re Keller, 93 Ill.Dec. 190, 486 N.E.2d at 292 (finding that application of Anders procedure in appeal of termination of parental rights puts "indigent appellants on the same footing as those able to afford private counsel and accomplishes the constitutional or statutory purpose for their appointment"); In re McQueen, 99 Ill.Dec. 63, 495 N.E.2d at 129 (same as to involuntary civil commitment proceedings); In re D.C. & L.C., 963 P.2d at 763-64 (noting that the right to counsel is statutorily guaranteed in appeal of termination of parental rights, that court-appointed counsel owes same duties to client as in criminal proceeding, and that counsel faces same ethical dilemma between representation of client and bar rule prohibiting frivolous claims).
While the right to appointed counsel in Baker Act involuntary civil commitment proceedings is provided by Florida statute,[3] the constitutional guarantee of due process would require no less. See Lynch v. Baxley, 386 F.Supp. 378, 388 (M.D.Ala.1974) (stating that due process applies to involuntary civil commitments and requires that the person who is the subject of the commitment proceeding be represented by counsel, appointed if necessary); In re Beverly, 342 So.2d 481, 489 (Fla.1977) ("The subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process."). While the United States Supreme Court has never ruled that Anders procedures are required in the civil context, we agree with the courts cited above that the policies and interests served by the Anders procedure in criminal proceedings are also present in involuntary civil commitments under Florida's Baker Act, namely, that the resolution of an appeal of the commitment order be related to the merits of the appeal rather than to the individual's ability to hire private counsel. Cf. Robbins, 528 U.S. at 276-77, 120 S.Ct. 746 (stating that due process requires state appellate process to provide fair opportunity for indigent's appeal to be resolved on the merits). Further, the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments. See Shuman v. State, 358 So.2d 1333, 1335 (Fla.1978).
*1120 The State noted in both its brief and at oral argument that civil commitment hearings under the Baker Act are "usually brief and factually straightforward" and "[v]ery rarely is the person's mental illness contested." Instead, the State contends, "the most common points on appeal" assert that evidence as to the person's likelihood to harm himself or others does not meet the clear and convincing standard. Thus, we do not agree with the State's contention that the independent appellate court review which is part of the Anders-type procedure will cause an undue burden to the court or result in unnecessary delay.
While we determine that the Anders procedure should apply to involuntary civil commitments, we are concerned that it may be a hollow remedy for those appellants who pursue an Anders appeal. At oral argument, the parties recognized that under the present time frame the appeals process often exceeds the six-month commitment period. See Fla R.App. P. 9.110 (governing appeal proceedings to review final orders of lower tribunals, including the time for filing the notice of appeal, preparation of the record by the clerk, and serving the initial brief), 9.210(f) (governing the time for service of answer and reply briefs). In fact, this delay would also occur in cases where counsel files an arguably meritorious appeal of a civil commitment order under the Baker Act.
In light of this time frame, we request the Appellate Rules Committee to consider the adoption of expedited procedures for the appeal of civil commitment orders under the Baker Act. Procedures that the committee should consider include, but are not limited to, an expedited time frame for the filing of the notice of appeal, a shortened time for the serving of briefs, and a provision requiring the appointment of a guardian ad litem.
For the reasons expressed above, we quash the decision of the First District Court of Appeal and remand this case to the district court with directions to consider Pullen's appeal under the Anders procedures outlined in this opinion.
It is so ordered.
SHAW, ANSTEAD, and LEWIS, JJ., concur.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which WELLS, C.J., and QUINCE, J., concur.
PARIENTE, J., concurring in part and dissenting in part.
I wholeheartedly concur in the majority's concern over the need for expedited procedures for appeal of civil commitment orders under the Baker Act and, in particular, a provision requiring the appointment of a guardian ad litem. I do not, however, concur with the extension of the Anders procedure[4] to Baker Act civil commitment proceedings, especially after appellate counsel has certified that he or she has conducted a conscientious review of the record and could find no meritorious grounds on which to appeal. The majority would have this good faith certification by appellate counsel trigger a responsibility on the part of the appellate court "to conduct a full and independent review of the record to discover any arguable issues apparent on the face of the record" as is now required by our Anders procedure in criminal appeals. See In re Anders Briefs, 581 So.2d 149, 151 (Fla.1991). Instead, I would find any additional review by the appellate court to perform an independent *1121 verification that no meritorious points exist to be unnecessary in light of the good faith certification procedure.
Indeed, I have substantial doubts about the necessity of our current Anders procedure in the criminal context.[5] I have never understood the logic of requiring appellate courts to provide a heightened review for those appeals that are the least meritorious by placing on the appellate courts the responsibility of searching the record for potential errors.[6]
Given these reservations about our current Anders procedures, in my opinion, extending the Anders procedure to Baker Act proceedings is an unnecessary and unwarranted use of judicial resources. Further, we have no information as to what effect extending Anders to Baker Act civil commitment appeals would have on the appellate workload.
I hasten to add that I do not minimize the significant deprivation of liberty resulting from an involuntary commitment. In my opinion, however, the very safeguards attendant to the Baker Act proceedings, including the right to appellate review, the appointment of appellate counsel to determine any procedural or substantive irregularities in the commitment, and the maximum duration of a six-month period of commitment before another review, comport with due process. Considering the three-factor test of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), I would find no due process deprivation.[7] I would rely instead on the certification of counsel. Moreover, rather than extending Anders to Baker Act civil commitment proceedings, I would consider revisiting the wisdom and necessity of our current Anders procedures in criminal cases.
WELLS, C.J., and QUINCE, J., concur.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] People v. Wende, 25 Cal.3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979). Under the Wende procedure, counsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case, with citations to the record. Counsel also attests that he or she has reviewed the record, explained this evaluation of the case to the client, provided the client with a copy of the brief, and informed the client of the right to file a pro se supplemental brief. Counsel further requests that the court independently examine the record for arguable issues. Unlike the Anders procedure, counsel following the Wende procedure neither explicitly states that the review has led him or her to conclude that an appeal would be frivolous (although that is considered implicit) nor requests leave to withdraw. Instead, counsel is silent on the merits of the case and expresses availability to brief any issues on which the court might desire briefing. The appellate court, upon receiving a Wende brief, must conduct a review of the entire record, regardless of whether the defendant has filed a pro se brief. If the appellate court, after its review of the record pursuant to Wende, also finds the appeal to be frivolous, it may affirm. If, however, it finds an arguable (i.e., nonfrivolous) issue, it orders briefing on that issue. See id. at 1074-76; see also Robbins, 528 U.S. at 265, 120 S.Ct. 746 (explaining the Wende procedure).
[3] See § 394.467(4), Fla. Stat. (2000).
[4] "Anders procedure" refers to the procedure described in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and elaborated in our decision of In re Anders Briefs, 581 So.2d 149 (Fla.1991).
[5] For a discussion of the shortcomings of the Anders approach, see Martha C. Warner, Anders in the Fifty States: Some Appellants' Equal Protection is More Equal than Others', 23 Fla. St. U.L.Rev. 625 (1996).
[6] This procedure applies only to court-appointed lawyerseither appellate public defenders or conflict counsel. However, privately retained lawyers are ethically bound not to prosecute an appeal that is wholly frivolous.
[7] Eldridge sets forth a three-factor test to determine whether the Due Process Clause of the Fourteenth Amendment mandates additional procedures. It instructs that we look to (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation through the procedures used and probable value of substitute procedures; and (3) the Government's interest, including the fiscal and administrative burden of substitute procedures. See 424 U.S. at 335, 96 S.Ct. 893.