ON MOTIONS TO WITHDRAW

MONACO, J.
The appellees, Anthony Williams and Henry Polite, have both been involuntarily civilly committed under the Jimmy Ryce Act, sections 394.910-394.931, Florida Statutes (2001), after having been tried by jury. Each appeals the final judgment of commitment rendered in his individual case. We consider these cases together because they raise a common question of procedure.
In each case the public defender has filed a brief in accordance with the process outlined by the Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and moved to withdraw. We write to address the issue of whether the Anders procedure applies to Jimmy Ryce cases. We conclude that it does.
The United States Supreme Court held in Anders that when appointed counsel moves to withdraw from representation of a criminal defendant on the ground that counsel finds the appeal to be wholly frivolous, the motion to withdraw is to be accompanied by a brief that refers to anything in the record that might arguably support an appeal. Thereafter, the appellate court is required to examine the record on appeal to the extent necessary to discover any errors apparent on the face of the record. If the appellate court independently finds an issue that is arguable on the merits, counsel is directed to file supplemental briefs addressing that issue for the benefit of the court. See State v. Causey, 503 So.2d 321 (Fla.1987).
Although the State Attorney is responsible for filing petitions seeking involuntary civil commitment, and although the public defender is required by statute to be assigned to represent persons who the state seeks to civilly commit, the Jimmy Ryce Act is deemed to be civil in nature, rather than criminal. See §§ 394.911, .9135, and .916, Fla. Stat. (2001); Westerheide v. State, 831 So.2d 93 (Fla.2002). As Anders was a criminal case, we must determine whether it applies to this civil proceeding.
Our task is made easier by the opinion of the Florida Supreme Court in Pullen v. State, 802 So.2d 1113 (Fla.2001), cert. denied, 536 U.S. 915, 122 S.Ct. 2381, 153 L.Ed.2d 199 (2002). There, the Court held that the Anders procedure is to be used in appeals of involuntary civil commitments under the Baker Act, § 394.451-394.4789, Fla. Stat. (2001). In broad terms, the *435 Baker Act provides a procedure for the short-term commitment of persons who are found to be mentally ill, and who, because of the illness, present a threat of substantial harm to their own well-being, or present a danger that the patient will inflict serious bodily harm on himself or herself or on others. See § 394.467(1), Fla. Stat. (2001).
The Supreme Court in Pullen first determined that an individual who faces involuntary commitment to a mental health facility has a “liberty interest” at stake. Pullen at 1116. Obviously, a person who is involuntarily restrained in a medical facility suffers some curtailment of his or her liberty. The Court concluded by finding that “the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments,” and held that the Anders procedure must be applied to involuntary civil commitments under the Baker Act. Pullen at 1119-1120.
It is the “liberty interest” of the affected party that appears to be the critical element. In N.S.H. v. Florida Dept. of Children and Family Servs., 843 So.2d 898 (Fla.2003), the supreme court declined to extend the Anders procedure to cases involving the termination of parental rights. In reaching this conclusion the Court noted, among other things, that termination cases, although of enormous importance, do not involve the loss of physical liberty.
If Anders applies to Baker Act cases, then it clearly applies to cases arising out of the Jimmy Ryce Act. The Supreme Court has determined that the fundamental right of liberty is curtailed by the short-term hospitalization of persons pursuant to the Baker Act, and that the An-ders procedure is, therefore, appropriate. Given that determination, it appears that the curtailment of liberty for extended periods under the Jimmy Ryce Act should compel the Anders review process.
Persons determined to be sexually violent predators under the Jimmy Ryce Act are committed to the custody of the Department of Children and Family Services, and are required to be housed in a “secure” facility,
[ F]or control, care, and treatment until such time as the person’s mental abnormality or personality disorder has so changed that it is safe for the person to be at large.
§ 394.917(2), Fla. Stat. (2001). The person committed is then periodically examined to determine whether he or she may safely be released into society. Potentially, therefore, a person committed under this procedure could be held in a secure facility for the remainder of that person’s life. See § 394.918, Fla. Stat. (2001). Clearly, therefore, the liberty interest at stake in Jimmy Ryce Act cases justifies the application of the Anders procedure.
Indeed, the only justification for not using the Anders review process is the increased workload that it places on appellate courts, and the concomitant delay in bringing these cases to a conclusion. When weighed against the curtailment of personal liberty resulting from a possible lifetime commitment, however, workload and time considerations must give way. We, therefore, approve the use of the An-ders procedure in appeals from Jimmy Ryce Act civil commitments. A separate Anders order, therefore, will be issued in each appeal. Because we may have misinterpreted the scope of Pullen, however, we also certify to the Florida Supreme Court the following question as one of great public importance:
ARE THE ANDERS PROCEDURES APPLICABLE TO CRIMINAL CASES TO BE FOLLOWED IN CASES INVOLVING APPEALS FROM JIMMY *436 RYCE ACT COMMITMENT ORDERS?
ORFINGER and TORPY, JJ., concur.