889 So.2d 804 (2004)
Anthony WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-1660.
Supreme Court of Florida.
December 9, 2004.
Beverly A. Pohl and Bruce S. Rogow of Bruce S. Rogow, P.A., Fort Lauderdale, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General and Thomas H. Duffy, Assistant Attorney General, Tallahassee, FL; Douglas T. Squire and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
LEWIS, J.
We have for review a decision of a district court of appeal on the following question, which the district court certified to be of great public importance:
ARE THE ANDERS PROCEDURES APPLICABLE TO CRIMINAL CASES TO BE FOLLOWED IN CASES INVOLVING APPEALS FROM JIMMY RYCE ACT COMMITMENT ORDERS?
Williams v. State, 852 So.2d 433, 435-36 (Fla. 5th DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
Before addressing the certified question in this case, we find it appropriate to briefly review the doctrine announced by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In Anders, the High Court set forth procedures to be used by appointed counsel in criminal cases when counsel cannot in good faith ascertain any meritorious issue to present on appeal. See id. at 744, 87 S.Ct. 1396. The defendant in Anders was seeking review of a criminal conviction and moved for the appointment of counsel to represent him on appeal. See id. at 739, 87 S.Ct. 1396. Pursuant to the defendant's motion, counsel was appointed by the appellate court. See id. Following the appointment, counsel, after reviewing the record and consulting with the defendant, informed the court by letter that there was no merit to the appeal and that the defendant wished to file a brief pro se. See id. at 739-40, 87 S.Ct. 1396. Following the denial of the *805 defendant's request for appointment of another attorney, he proceeded pro se and his conviction was affirmed. See id. at 740, 87 S.Ct. 1396. Subsequently, the defendant filed a petition for a writ of habeas corpus asserting a deprivation of his right to appointed counsel in his original appeal. See id. The United States Supreme Court held that the procedures utilized by counsel and the California court did "not comport with fair procedure and lack[ed] that equality that is required by the Fourteenth Amendment." Id. at 741, 87 S.Ct. 1396. The High Court outlined the following procedures for appointed counsel to follow under these circumstances:
[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.
Id. at 744, 87 S.Ct. 1396; see also In re Anders Briefs, 581 So.2d 149, 151 (Fla.1991).
We addressed the applicability of the Anders procedures to involuntary civil commitment orders under Florida's Baker Act in our 2001 decision in Pullen v. State, 802 So.2d 1113 (Fla.2001). In Pullen, we rejected the argument that because Anders involved a criminal prosecution and was therefore based on the federal and state right to counsel in criminal prosecutions, those procedures were inapplicable to involuntary civil commitment orders. See id. We concluded that "while Anders involved an indigent criminal defendant, the United States Supreme Court expressed an overriding concern for `substantial equality and fair process' in the appellate process." Id. at 1117 (quoting Anders, 386 U.S. at 744, 87 S.Ct. 1396). We noted that "an individual who faces involuntary commitment to a mental health facility has a liberty interest at stake." Id. at 1116. Moreover, we reiterated our holding in In re Beverly, 342 So.2d 481 (Fla.1977), that constitutional due process requires that "[t]he subject of an involuntary civil commitment proceeding has the right to the effective assistance of counsel at all significant stages of the commitment process." Pullen, 802 So.2d at 1116 (alteration in original) (quoting In re Beverly, 342 So.2d at 489). Concluding that confinement stemming from a court's involuntary commitment order effectuates a "massive curtailment of liberty" interests, we held that the "policies and interests served by the Anders procedures in criminal proceedings are also present in involuntary civil commitment proceedings under Florida's Baker Act." Pullen, 802 So.2d at 1117, 1119. Accordingly, we held the Anders procedures applicable to involuntary civil commitments under the Baker Act. See id. at 1120.
We now turn to the issue presented by the certified question. Under Florida's Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act (hereinafter "Jimmy Ryce Act"), §§ 394.910-.931 of the Florida Statutes (2002), persons determined to be sexually *806 violent predators[1] are required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2), Fla. Stat. (2002). Subsequent to this commitment, one found to be within the classification is periodically examined, at least annually, and a determination is to be made whether he or she may be released safely. See § 394.918, Fla. Stat. (2002). Given this statutory scheme, the district court aptly noted that "a person committed under this procedure could be held in a secure facility for the remainder of that person's life." Williams, 852 So.2d at 435. Clearly, an involuntary civil commitment resulting in an individual's confinement for an indeterminate, and potentially indefinite, period of time presents the sort of "massive curtailment of liberty" interests with which we were concerned in Pullen.
Given our decision in Pullen and the reasoning contained therein, we conclude that the protections afforded by the Anders procedures must be extended to appeals from involuntary civil commitments of sexually violent predators under the Jimmy Ryce Act. Our conclusion in Pullen that involuntary commitments under the Baker Act, which are limited by statute to only six months, see section 394.467(6)(b), Florida Statutes (2003), involve a sufficient curtailment of liberty to justify application of the Anders procedures dictates that those same procedures also be applied to commitment orders entered pursuant to the Jimmy Ryce Act, which may result in confinement for an indeterminate and potentially indefinite period of time.
Based on the foregoing, we answer the certified question in the affirmative and approve the decision of the Fifth District Court of Appeal.[2]
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] A "sexually violent predator" is defined by the Act as any person who:

(a) Has been convicted of a sexually violent offense; and
(b) Suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
§ 394.912(10), Fla. Stat. (2002).
[2] We decline to address the other claim asserted by the appellant Anthony Williams because it is outside the scope of the certified question and was not the basis of our discretionary review.