59 So.3d 131 (2011)
Edwin BURLEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D09-1307.
District Court of Appeal of Florida, Third District.
January 19, 2011.
*132 Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for appellant.
Pamela Jo Bondi, Attorney General, and Douglas J. Glaid, Senior Assistant Attorney General, for appellee.
Before SHEPHERD, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, J.
Edwin Burley appeals from an Order of Commitment for Involuntary Placement ("Order of Commitment"), entered pursuant to section 394.467, Florida Statutes (2009) ("Baker Act"). We reverse the order under review and remand for further proceedings consistent with this opinion.
In April 2005, Burley was charged in Circuit Court Case No. 05-11803 with attempted second degree murder with a deadly weapon, aggravated battery, and carrying a concealed firearm, and in Case No. 05-13208, he was charged with battery on a law enforcement officer. In December 2005, an order was entered finding Burleywho is cognitively impaired, is a hemiplegic, suffers from seizures, and has significant speech problemsincompetent to stand trial. Burley was admitted to South Florida Evaluation and Treatment Center ("SFETC"), a secure forensic psychiatric facility. On September 27, 2007, Burley was transferred to Northeast State Hospital, a civil hospital, which is a less restrictive environment than SFETC, to continue treatment. However, less than one month after his placement in a less restrictive facility, on November 6, 2007, Burley was returned to SFETC due to his involvement in physical altercations.
In February 2009, SFETC advised the lower tribunal that Burley remained incompetent to stand trial and that he was "non-restorable." Thereafter, in April 2009, the State filed a Notice of Hearing and Petition for Involuntary Placement, pursuant to Florida Rule of Criminal Procedure 3.212 and the Baker Act. At the end of the two-day evidentiary hearing, at which several experts and Burley's sister testified, Burley's counsel requested permission to make a closing argument. The record reflects that the trial court denied the request based on its belief that a closing argument was not necessary because it heard the testimony and a jury was not present.
Thereafter, the trial court orally ruled that Burley met the criteria for involuntary inpatient placement under the Baker Act, and it subsequently entered the Order of Commitment. In this appeal, Burley has raised several issues which will be addressed separately.
First, Burley contends that trial court's findings that he is psychotic and suffers from "ongoing" psychosis are not supported by competent, substantial evidence. Based on the State's partial confession of error, and our independent review of the record, we agree in part.
At the evidentiary hearing, the State presented expert testimony reflecting that, although Burley has been diagnosed with a "psychotic disorder due to head trauma" and he is currently being treated with injections of an anti-psychotic medication every four weeks, he does not appear to be currently psychotic. Therefore, the record *133 before this Court supports the trial court's finding that Burley suffers from a psychotic disorder, but as the State properly concedes, the record does not support the trial court's finding that Burley is suffering from "ongoing" psychosis.
Second, Burley contends that the evidence was insufficient to support the trial court's finding that he meets the criteria for involuntary inpatient placement under the Baker Act. Based on the record before us, we disagree.
The record before this Court demonstrates that the State's Petition for Involuntary Placement stemmed from the 2005 criminal charges, including attempted second degree murder by shooting the victim in the chest; aggravated battery by striking the victim in the face with a handgun; and carrying a concealed firearm. The arrest affidavit in Circuit Court Case No. 05-11803 asserts that Burley and the victim were involved in a verbal dispute, and when the victim stood up and attempted to strike Burley with a closed fist, Burley pulled out a handgun from his left pocket and fired it.
While in custody for the above offenses, Burley was also charged with battery on a law enforcement officer. The arrest affidavit in Case No. 05-13208 states that Burley suddenly, and without provocation, struck a correctional officer in the face with his fist, and as a result, the officer sustained a minor injury.
In addition to the alleged acts of violence that occurred in 2005, the record reflects that during the seven-year period that preceded his arrest, Burley lived with his sister, and during this period, Burley was charged with other criminal offenses, including two counts of battery on a law enforcement officer and two counts of grand theft in 1997; assault and battery in 2003; and assault and battery in 2004.
When Burley was found incompetent to stand trial for the 2005 criminal charges, he was admitted to SFETC, a secure forensic psychiatric facility, and on September 27, 2007, he was transferred to a less restrictive environment, Northeast State Hospital, to continue his treatment. Shortly thereafter, however, on November 6, 2007, Burley was returned to SFETC due to his involvement in physical altercations. After being returned to SFETC, Burley continued to be involved in physical altercations, as outlined in an Annual Competency Evaluation Report to Court, dated February 3, 2009, which was issued by SFETC. In the report, Damarys Sanchez, a licensed psychologist, who also testified at trial, noted:
[Burley] has been involved in several physical altercations. For example, on December 13, 2008 a progress note by the unit nurse indicated Mr. Burley "punched another patient unprovoked." Again on January 22, 2008, Mr. Burley was observed engaging in aggressive behaviors during which he was trying to punch another patient on his unit. When confronted by his Treatment Team about his aggressive behaviors, he became verbally threatening. Specifically, he threatened to "hit" the psychiatrist. Subsequent to his threats, the treating psychiatrist ordered an Emergency Treatment Order and initiated a court petition for involuntary medication. Nursing notes have also revealed he has threatened peers.
At the hearing conducted on the State's Petition for Involuntary Placement, Dr. Sanford Jacobson, a forensic psychiatrist, testified that Burley's records indicate that he has had psychotic symptoms, but that these symptoms appear to be abated because, approximately two to three months before the hearing, Burley began to receive injections of an anti-psychotic medication every four weeks. Dr. Jacobson *134 opined that Burley is not capable of surviving alone or determining for himself whether psychiatric placement is necessary, and although Burley's family does appear to be adequately trained and prepared, placement with family was not appropriate at that time, based in part on his recent aggression and the 2005 criminal charges. When asked his opinion as to whether there is a substantial likelihood that Burley would inflict bodily harm on himself or others, Dr. Jacobson stated that he could not ignore past events, such as the 2005 criminal charges, and that Burley "had developed a pattern of aggression in that hospital." Dr. Jacobson, however, opined that if Burley could continue his current state for six months, a less restrictive alternative would be appropriate.
Dr. Sanchez, the forensic psychologist at SFETC who has been treating Burley since May of 2008, also did not support placement of Burley with his family at this time. Dr. Sanchez based her opinion on Burley's prior behavior extending over a lengthy period of time, the fact that Burley has not been stable for a significant period of time, and the recency of his aggressive behavior. Dr. Sanchez testified that although Burley has shown improvement over the last two months after the hospital began injecting him with an anti-psychotic medication and a tranquilizer, it was simply too soon to predict stability.
Dr. Richardson, a clinical psychologist, who also testified at the hearing, agreed that if the events in January 2009 (two months before the hearing) were considered "recent," Burley met the criteria for involuntary commitment. Diane Luly, a program supervisor at SFETC, also opined that no less restrictive placement was appropriate based on Burley's aggressive behavior in January and February.
As the record demonstrates that there was substantial competent evidence to support the trial court's findings that: (1) there exists a substantial likelihood Burley will inflict serious bodily harm on himself or others; (2) Burley is manifestly incapable of surviving alone, and without treatment, he is likely to suffer from neglect or refuse to care for himself which would pose a real threat of substantial harm to himself or others; and (3) at the time of the hearing, placement with his family was not appropriate, we conclude that the trial court did not err by determining that Burley met the criteria for involuntary inpatient placement pursuant to the Baker Act.
Lastly, Burley contends that the trial court violated his due process rights by not allowing his counsel to present a closing argument. As to this argument, we agree.
In addressing Burley's due process argument, we find the Second District's decision in Chalk v. State, 443 So.2d 421 (Fla. 2d DCA 1984), persuasive. In Chalk, at the end of an involuntary placement hearing, Chalk's counsel requested permission to make a closing argument. In denying the request, the trial court informed counsel that it would not listen to argument because it could "remember twenty minutes of evidence." Id. at 422.
On appeal, Chalk argued that his due process rights were violated because his counsel was not permitted to present a closing argument. In finding that Chalk's "constitutional due process rights were violated when his trial counsel was not allowed to present a closing argument," the Second District explained that "[i]nvoluntary commitment has been termed `a massive curtailment of liberty,'" id. (quoting Humphrey v. Cody, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972)), and "[t]hose whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are those incarcerated in our correctional institutions." Chalk, 443 So.2d at 422 (quoting Shuman v. State, 358 So.2d *135 1333, 1335 (Fla.1978)). Further, the court noted that the subject of an involuntary commitment petition has the right to the assistance of counsel. Chalk, 443 So.2d at 422 (citing § 394.467(4)(e), Fla. Stat. (Supp. 1982)).[1]
Based on the reasoning set forth in Chalk, we conclude that Burley's due process rights were violated when his counsel's request to present a closing argument was denied. Chalk, 443 So.2d at 422-23; see Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (stating that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); Ibur v. State, 765 So.2d 275, 276 (Fla. 1st DCA 2000) ("Because involuntary commitment is a substantial deprivation of liberty at which fundamental due process protections must attach, the patient cannot be denied the right to be present, to be represented by counsel, and to be heard."); Madden v. State, 463 So.2d 270, 270 (Fla. 2d DCA 1984) (holding that trial court violated Madden's due process rights in involuntary commitment proceeding by denying his counsel's request to present closing argument); Feiler v. State, 443 So.2d 1072, 1072 (Fla. 2d DCA 1984) (holding that Feiler's due process rights were violated where trial court denied her counsel's request to present closing argument in involuntary commitment proceeding); see also Pullen v. State, 802 So.2d 1113, 1119 (Fla.2001).
Thus, although we find that there was substantial competent evidence to support the trial court's findings and involuntary commitment pursuant to the Baker Act, we reverse the order under review and remand to allow the parties' attorneys to make closing arguments. Because the record before this Court indicates that the attorneys and trial court can "become once again fully cognizant of all portions of the hearing so as to make closing argument at least as meaningful as if it had been originally permitted," a new hearing is not required. Madden, 463 So.2d at 270; see also Feiler, 443 So.2d at 1072. We remind the parties and the trial court that, as there was no record evidence that Burley suffers from "ongoing" psychosis, such argument should not be presented during closing argument and may not be included in the trial court's order entered after reconsideration of the evidence in light of counsels' closing arguments. Burley shall remain involuntarily committed pending the entry of the order upon remand, or until he is otherwise eligible for release.
Reversed and remanded with instructions.
SALTER, J., concurs.
SHEPHERD, J., concurring in part, and dissenting in part.
I agree that Defendant's due process rights were violated in this case when his *136 counsel was not afforded an opportunity to present a closing argument. See Chalk v. State, 443 So.2d 421, 422 (Fla. 2d DCA 1984). As the United States Supreme Court has explained:
Some cases may appear to the trial judge to be simple-open and shut-at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be `likely to leave [a] judge just where it found him.' But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.
Herring v. New York, 422 U.S. 853, 863, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (internal footnotes omitted). However, I respectfully dissent from the remainder of the majority opinion. A court cannot logically reverse and affirm a trial court order at the same time. That is precisely what the majority does in this case.
NOTES
[1] Section 394.467(4), Florida Statutes (2009), provides:

(4) APPOINTMENT OF COUNSEL. Within 1 court working day after the filing of a petition for involuntary inpatient placement, the court shall appoint the public defender to represent the person who is the subject of the petition, unless the person is otherwise represented by counsel. The clerk of the court shall immediately notify the public defender of such appointment. Any attorney representing the patient shall have access to the patient, witnesses, and records relevant to the presentation of the patient's case and shall represent the interests of the patient, regardless of the source of payment to the attorney.
Whereas, section 394.467(4)(e), Florida Statutes (1982 Supp.), provides in part:
The patient and his guardian or representative shall be informed of the right to counsel by the hearing officer. In the event a patient cannot afford counsel in a hearing before a hearing officer, the public defender in the county where the hearing is to be held shall act as attorney for the patient