STATE EX REL. STROETZ, Petitioner, v. BURKE, WARDEN, Respondent.

*September 27, 1965.*

For the petitioner there were briefs by *Peter S. Nelson* of Appleton.

For the respondent there were briefs by *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

PER CURIAM.   In this *habeas corpus* proceeding we are concerned with alleged denial of constitutional rights with respect to the original 1954 judgment and the subsequent 1959 order continuing petitioner in the control of the department.

### *The 1954 Judgment.*

Petitioner's attack upon the 1954 judgment of conviction is grounded upon a claim that petitioner was deprived of representation of counsel.   The record discloses that the following took place at the time of petitioner's arraignment on June 25, 1954:

"By the Court: You have heard the reading of the complaint—are you guilty or not guilty?

"Ralph Stroetz: Guilty.

"By the Court: At this time the Court advises you that you can retain an attorney to represent you.  Do you wish to retain and [sic] attorney before you plea to the Information? *A.* No.

"*Q.* If you are indigent the Court will appoint an attorney for you. Do you wish to retain an attorney? *A.* No. (At which time the Information was read to the Defendant.)

"*Q.* Let the record show the defendant states he—the defendant states in open court he does not wish to retain a lawyer before pleading to the Information. The defendant was duly advised of his legal and constitutional rights. What is your plea to the reading of the Information? *A.* Guilty.

"*Q.* Let the record so indicate. Upon said plea the Court finds the defendant is guilty."

Prior to arraignment petitioner had freely admitted his guilt to the district attorney and the district attorney had obtained a statement from petitioner in question and answer form in which petitioner had freely described the acts establishing the commission of the crime with which he was charged. Petitioner testified at the circuit court hearing that he was induced to plead guilty and waive counsel by reason of certain statements made to him by the district attorney including that, if he pleaded guilty, he would be committed for treatment and rehabilitation and then released at the end of six months. The district attorney denied making the statements testified to by petitioner, and the circuit court expressly found that "there is more credence in his [the district attorney's] denials than there is in the charges [made by petitioner]" and, "The Petitioner was not induced to waive counsel and enter a plea of guilty by any statement, representation or promise of the District Attorney." The credibility of petitioner and of the district attorney was for the circuit court to determine.

Petitioner further contends that the municipal court at time of arraignment advised petitioner of his right to counsel in a very perfunctory and inadequate manner that fell far short of the standards set forth in *State ex rel. Burnett*

*v. Burke.*[1] However, as we pointed out in *State ex rel. Kline v. Burke,*[2] merely because all of the precautionary steps recommended in *Burnett* may not have been followed does not render constitutionally tainted an acceptance of waiver of counsel and a plea of guilty. This is because the evidence adduced at the hearing conducted by the circuit court may support a finding that the waiver of counsel was freely, voluntarily, and understandingly made by petitioner.

At the time of arraignment petitioner was twenty-five years of age. He had graduated from high school but ranked No. 140 scholastically in a class of 154. Petitioner then attended Carthage College for a year and a half when he was asked to leave because of poor grades. Thereafter, he attended a university extension center for a short time and again was asked to leave because of poor work. At the time of his arrest he was employed by the Marathon Paper Corporation as a pressman's helper earning $55 to $62 per week. The evidence establishes that petitioner appreciated the revolting nature of his offense, was embarrassed and remorseful, and wanted the matter of plea and sentence over with as quickly and quietly as possible. Furthermore, petitioner had been in court twice before on criminal charges, first for assault and battery and then for operating a motor vehicle while intoxicated, and thus had some prior familiarity with criminal proceedings in court.

The circuit court found an intelligent waiver of counsel at time of arraignment by this express finding:

"The State has met its burden of proof to satisfy this court that, notwithstanding the record made, as falling below the standards of section 957.26 (2) of the statutes, the plaintiff sufficiently understood his rights to counsel, intelligently waived them and voluntarily entered a plea of guilty."

---

[1] (1964), 22 Wis. (2d) 486, 126 N. W. (2d) 91.
[2] (1965), 27 Wis. (2d) 40, 45, 133 N. W. (2d) 405.

We determine that this finding is not against the great weight and clear preponderance of the evidence.

*The 1959 Order.*

Sec. 959.15 (12), Stats. 1957, provides that a person who has been convicted of a sex crime and been committed to the department for treatment, such as petitioner, who has not been previously discharged from control, must be so discharged at the expiration of the maximum term prescribed by law for the offense for which he was committed unless the department has previously made an order directing that he remain subject to its control and has applied to the committing court for a review of such order as provided in sub. (13) of sec. 959.15. The maximum term of imprisonment under sec. 351.40, Stats. 1953 (now sec. 944.17), under which he was convicted, is five years.

Pertinent to this proceeding are subs. (13) to (15) of sec. 959.15, Stats. 1957, which provide:

"(13) *Continuance of control; order and application for review by the committing court.* If the department is of the opinion that discharge of a person from its control at the time provided in sub. (12) would be dangerous to the public for reasons set forth in sub. (14), it shall make an order directing that he remain subject to its control beyond that period; and shall make application to the committing court for a review of that order at least 90 days before the time of discharge stated.

"(14) *Action of committing court upon application for review; reasons for continuance of control by the department.* (a) If the department applies to the committing court for the review of an order as provided in sub. (13), *the court shall notify the person whose liberty is involved,* and, if he be not *sui juris,* his parent or guardian as practicable, *of the application, and shall afford him opportunity to appear in court with counsel and of process to compel the attendance of wit-*

*nesses and the production of evidence. He may have a doctor or psychiatrist of his own choosing examine him in the institution to which he is confined or at some suitable place designated by the department. If he is unable to provide his own counsel, the court shall appoint counsel to represent him. He shall not be entitled to a trial by jury.* (Italics supplied.)

"(b) If, after a hearing, the court finds that discharge from the control of the department of the person to whom the order applies would be dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality the court shall confirm the order. If the court finds that discharge from the control of the department would not be dangerous to the public for the causes stated, the court shall order that he be discharged from the control of the department at the time stated in the original commitment.

"(15) *Review by court of subsequent orders of the department.* (a) When an order of the department is confirmed as provided in sub. (14), the control of the department over the person shall continue, but unless he is previously discharged, the department shall within 5 years after the date of such confirmation make a new order and a new application for review thereof in accordance with this section. Such orders and applications may be repeated as often as in the opinion of the department it may be necessary for the protection of the public.

"(b) Every person shall be discharged from the control of the department at the termination of the periods stated in par. (a) of this subsection unless the department has previously acted therein as required, and shall be discharged if the court fails to confirm the order as provided in sub. (14)."

The evidence discloses that about a week before the March 20, 1959, court hearing, on the department's order continuing its control over petitioner, one of the prison officials notified him of the hearing. The only evidence that petitioner was advised prior to the hearing of his right then to have counsel is the testimony of Mr. Coogan, Administrator of Probation and Corrections, that he so advised petitioner about twenty minutes prior to the hearing. Petitioner denied having any recollection of such a conversation.

The circuit court made these findings with respect to this 1959 hearing:

"15. That prior to and on March 20, 1959, the trial court failed to comply with the requirements of Sec. 959.15 (14) (a) with respect to notifying the Petitioner of the hearing for review of the Department's order for continued control; with respect to affording him the opportunity to appear in court with counsel; with respect to advising him of his right to have process to compel the attendance of witnesses and production of evidence; and with respect to his right to be examined by a doctor or psychiatrist of his choice, or of his right to have counsel appointed for him on his inability to retain one.
" . . .

"17. The routine advice of Mr. Matt Coogan, Administrator of Probation and Corrections, to the Petitioner with respect to his rights to be represented by counsel at his or State expense, twenty minutes before the hearing, if given, was wholly untimely and insufficient to meet the requirements of Sec. 959.15 (14) (a) of the statutes.

"18. The State failed to meet its burden of proof to satisfy this court that the Petitioner sufficiently understood his rights in connection with the hearing and intelligently waived his rights to counsel, medical testimony, and process for calling witnesses.

"19. The Petitioner did not intelligently understand or know his rights with respect to the hearing. He was not timely or sufficiently advised or notified with respect to his rights so as to afford him the timely opportunity to avail himself of them. *The hearing on March 20, 1959, was a unilateral proceeding, not participated in by Petitioner because of his failure to appreciate its purpose or nature or significance, and wholly violative of his statutory and Constitutional rights of representation and participation.*" (Emphasis supplied.)

We confirm these quoted findings which are fully supported by the great weight and clear preponderance of the evidence. We further determine that petitioner was denied

his statutory and constitutional rights to be represented by counsel at this 1959 hearing. This brings us to the crucial issue of whether this denial is jurisdictional so as to render completely void the order of March 20, 1959, or whether it is a nonjurisdictional error which can be cured by a new court hearing on the original or further departmental order continuing control at which petitioner is adequately represented by counsel. If the March 20, 1959, order were to be held absolutely void then petitioner would be entitled to his immediate release from control.

A majority of the court conclude that the error is nonjurisdictional. Being nonjurisdictional, if petitioner any time prior to the 1964 hearing had filed a petition for *habeas corpus,* the remedy which would have been accorded him would have been to order a new court hearing at which he would have been provided with counsel, if indigent, and accorded the other rights provided in sub. (14) of sec. 959.15, Stats. However, the 1964 hearing upon the further order of the department did accord petitioner all these rights and renders the errors of the 1959 hearing nonprejudicial as of this time.

The court majority predicate their determination of nonjurisdictional error upon legislative intent. They cannot conceive that the legislature intended that one convicted of a sex crime whom both the department and the committing court after a hearing had determined to be potentially dangerous to the public should be absolutely released because of error in denying representation by counsel. Rather they are convinced that it would better accord with legislative intent to hold that the error was curable by a further court hearing conducted in accordance with statute.

The findings of the circuit court are confirmed and the petition for *habeas corpus* is denied.