# HUMPHREY *v.* CADY, WARDEN

No. 70–5004.   Argued December 7, 1971—Decided March 22, 1972

MARSHALL, J., delivered the opinion of the Court, in which all Members joined except POWELL and REHNQUIST, JJ., who took no part in the consideration or decision of the case.

*Irvin B. Charne,* by appointment of the Court, 402 U. S. 927, argued the cause and filed briefs for petitioner.

*George L. Frederick,* Assistant Attorney General of Wisconsin, argued the cause for respondent. With him on the brief were *Robert W. Warren,* Attorney General, and *Mary V. Bowman,* Assistant Attorney General.

Mr. Justice Marshall delivered the opinion of the Court.

Petitioner was convicted of contributing to the delinquency of a minor, a misdemeanor punishable by a maximum sentence of one year. Wis. Stat. Ann. § 947.15 (1958). In lieu of sentence, he was committed to the "sex deviate facility," located in the state prison, for a potentially indefinite period of time, pursuant to the Wisconsin Sex Crimes Act. Wis. Stat. Ann. § 959.15 (1958), as amended, Wis. Stat. Ann., c. 975 (1971). In this petition for federal habeas corpus, he seeks to challenge the constitutional validity of the statutory procedures for commitment and the conditions of his confinement. The District Court dismissed his petition without an evidentiary hearing, on the grounds that (1) his claims were for the most part lacking in merit as a matter of law, and (2) his claims had been waived by his failure to present them adequately to the state courts. The Court of Appeals refused to certify probable cause for an appeal, 28 U. S. C. § 2253, relying not on the ground of waiver but solely on the ground that the claims lacked merit.[1] We granted certiorari to consider the constitutional challenge to the statute. 401 U. S. 973 (1971). We have concluded that an evidentiary hearing is necessary to resolve petitioner's constitutional claims, and also to resolve the question of waiver; consequently we remand the case to the District Court for a hearing.[2]

---

[1] The Court of Appeals said in pertinent part:

"Plaintiff also claims various procedural rights to which he would be entitled in the course of a separate proceeding for conviction of an offense, but the continuation of commitment is not such [a] proceeding." App. 58.

[2] After the petition for certiorari had been filed, it appears that petitioner was released on parole to the custody of the Secretary of the State Department of Health and Social Services. That change

# I

The Wisconsin Sex Crimes Act provides that after a person is convicted of any crime, the court may consider whether the crime was "probably directly motivated by a desire for sexual excitement." If the court finds such motivation, it may commit the defendant to the Department of Public Welfare (now the Department of Health and Social Services) for a social, physical, and mental examination. If the Department recommends specialized treatment for the defendant's "mental and physical aberrations," the court must hold a hearing on the need for such treatment. If the State establishes the need for treatment by a preponderance of the evidence, the court must commit the defendant to the Department for treatment in lieu of sentence, for a period equal to the maximum sentence authorized for the defendant's crime. At the end of that period, the Department may petition for an order renewing the commitment for five years. After notice and hearing, the court may renew the commitment if it finds that the defendant's discharge would be "dangerous to the public because of [his] mental or physical deficiency, disorder or abnormality." Further five-year renewals may be similarly obtained without limitation.

Petitioner is presently subject to a five-year renewal order, obtained at the expiration of his one-year maximum sentence. His principal claims relate to the procedure that resulted in the order renewing his commitment. In addition, he challenges the original commitment procedures, and the conditions of his confinement.

---

in his custody does not necessarily moot his claims; it simply requires the substitution of the Secretary for the prison warden as respondent, which can be accomplished by motion under Rule 49 of this Court, or by the District Court on remand.

A review of petitioner's claims compels us to conclude that they are at least substantial enough to warrant an evidentiary hearing, in light of this Court's decisions in *Baxstrom* v. *Herold,* 383 U. S. 107 (1966), and *Specht* v. *Patterson,* 386 U. S. 605 (1967). Thus we reject the contrary conclusion of the Court of Appeals, implicit in its decision to deny leave to appeal.

A. One of petitioner's principal arguments is that commitment for compulsory treatment under the Sex Crimes Act, at least after the expiration of the initial commitment in lieu of sentence, is essentially equivalent to commitment for compulsory treatment under Wisconsin's Mental Health Act, Wis. Stat. Ann., c. 51 (1957); that a person committed under the Mental Health Act has a statutory right to have a jury determine whether he meets the standards for commitment, Wis. Stat. Ann. § 51.03; and that petitioner's commitment under the Sex Crimes Act without such a jury determination deprived him of equal protection of the laws.

In *Baxstrom,* substantially the same argument was advanced by a convicted prisoner who was committed under New York law for compulsory treatment, without a jury trial, at the expiration of his penal sentence. This Court held that the State, having made a jury determination generally available to persons subject to commitment for compulsory treatment, could not, consistent with the Equal Protection Clause, arbitrarily withhold it from a few. 383 U. S., at 110–112. The Court recognized that the prisoner's criminal record might be a relevant factor in evaluating his mental condition, and in determining the type of care and treatment appropriate for his condition; it could not, however, justify depriving him of a jury determination on the basic question whether he was mentally ill and an appropriate subject for some kind of compulsory treatment.

Since 1880, Wisconsin has relied on a jury to decide whether to confine a person for compulsory psychiatric treatment.[3] Like most, if not all, other States with similar legislation, Wisconsin conditions such confinement not solely on the medical judgment that the defendant is mentally ill and treatable, but also on the social and legal judgment that his potential for doing harm, to himself or to others, is great enough to justify such a massive curtailment of liberty.[4] In making this determination, the jury serves the critical function of introducing into the process a lay judgment, reflecting values generally held in the community, concerning the kinds of potential harm that justify the State in confining a person for compulsory treatment.[5]

---

[3] The jury-trial provision first appeared in c. 266, Wis. Laws 1880, pp. 299, 301; compare. Wis. Rev. Stat. § 593, p. 208 (1878), with Wis. Rev. Stat. § 593, p. 114 (1883 Supp.).

[4] The Mental Health Act authorizes commitment of a person for compulsory treatment if the court or jury finds that he is (1) mentally ill, and (2) a "proper subject for custody and treatment." Wis. Stat. Ann. §§ 51.02 (5), 51.03 (1957). The social and legal aspects of the determination are implicit not only in the determination of who is a "proper subject for custody and treatment," but also in the definition of mental illness itself, contained in the Interstate Compact on Mental Health, and recently adopted by Wisconsin, as well as by many other States:

" 'Mental illness' means mental disease *to such extent* that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." (Emphasis added.) Wis. Stat. Ann. § 51.75, Art. II (f) (Supp. 1971).

[5] In 1926 the Wisconsin Legislature voted to eliminate the jury-trial provision from the Mental Health Act, at the request of the state medical society, but the Governor vetoed the bill. Again in 1947 an attempt was made to eliminate the jury trial. A legislative committee reported that juries too often refused to order commitment when the medical experts thought it appropriate. Wis. Stat. 1947, c. 51, general comment of interim committee, at 802. This time the state legislature refused to do away with jury trials, however, and indeed when the legislature enacted in that same year a

Commitment for compulsory treatment under the Wisconsin Sex Crimes Act appears to require precisely the same kind of determination, involving a mixture of medical and social or legal judgments.[6] If that is so (and that is properly a subject for inquiry on remand), then it is proper to inquire what justification exists for depriving persons committed under the Sex Crimes Act of the jury determination afforded to persons committed under the Mental Health Act.

Respondent seeks to justify the discrimination on the ground that commitment under the Sex Crimes Act is triggered by a criminal conviction; that such commitment is merely an alternative to penal sentencing; and consequently that it does not require the same procedural safeguards afforded in a civil commitment proceeding. That argument arguably has force with respect to an initial commitment under the Sex Crimes Act, which is imposed in lieu of sentence, and is limited

---

new statute for the compulsory treatment of "sex psychopaths," the new statute contained a provision for jury trial paralleling the provision in the Mental Health Act. Wis. Stat. 1947, § 51.37 (4). Not until 1951, with the passage of a new Sex Crimes Act, did the provision for jury trial disappear from the legislation governing the compulsory treatment of sex offenders. Wis. Stat. 1951, § 340.485 (14) (a).

[6] The Sex Crimes Act authorizes an initial commitment of an otherwise eligible person for compulsory treatment if the court finds that he is in need of "specialized treatment for his mental or physical aberrations," Wis. Stat. Ann. § 975.06 (1)–(2) (1971), which restated Wis. Stat. Ann. § 959.15 (5)–(6), adding a provision for a judicial hearing, as required by the Wisconsin Supreme Court in *Huebner* v. *State*, 33 Wis. 2d 505, 147 N. W. 2d 646 (1967). The statute authorizes renewal of the commitment order if the court finds that discharge would be "dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality." Wis. Stat. Ann. § 975.14 (1971), formerly Wis. Stat. Ann. § 959.15 (14) (b) (1958).

in duration to the maximum permissible sentence.[7]   The argument can carry little weight, however, with respect to the subsequent renewal proceedings, which result in five-year commitment orders based on new findings of fact, and are in no way limited by the nature of the defendant's crime or the maximum sentence authorized for that crime.   The renewal orders bear substantial resemblance to the post-sentence commitment that was at issue in *Baxstrom*.   Moreover, the Wisconsin Supreme Court has expressly held that even the initial commitment under the Sex Crimes Act is not simply a sentencing alternative, but rather an independent commitment for treatment, comparable to commitment under the Mental Health Act.   The Wisconsin court held, anticipating this Court's decision in *Specht* v. *Patterson*, 386 U. S. 605 (1967), that a hearing was required even for the initial commitment under the Sex Crimes Act.   *Huebner* v. *State*, 33 Wis. 2d 505, 521–530, 147 N. W. 2d 646, 654–658 (1967).   While the *Huebner* decision was grounded in considerations of procedural due process, the Wisconsin court also noted carefully the relevance of *Baxstrom* and the Equal Protection Clause to its decision.[8]

---

[7] Two courts of appeals have implied the contrary, see *Matthews* v. *Hardy*, 137 U. S. App. D. C. 39, 420 F. 2d 607 (1969), cert. denied, 397 U. S. 1010 (1970), and *United States ex rel. Schuster* v. *Herold*, 410 F. 2d 1071 (CA2), cert. denied, 396 U. S. 847 (1969). This case does not present the claim of right to a jury trial at the initial commitment, however, and we intimate no view on that question here.   Petitioner's only objections to the initial commitment are discussed *infra*, at 513.

[8] Following *Huebner*, petitioner rests his claim alternatively on *Specht* and the Due Process Clause, or on *Baxstrom* and the Equal Protection Clause.   The Wisconsin Supreme Court has, however, rejected the argument that either *Baxstrom* or *Huebner* requires the State to extend to sex offenders the right to a jury trial at the

An alternative justification for the discrimination might be sought in some special characteristic of sex offenders, which may render a jury determination uniquely inappropriate or unnecessary. It appears, however, that the Mental Health Act and the Sex Crimes Act are not mutually exclusive; that "aberrations" warranting commitment under the latter might also amount to "mental illness" warranting commitment under the former.[9] The equal protection claim would seem to be especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, merely by the arbitrary decision of the State to seek his commitment under one statute rather than the other.[10]

B. The remand hearing will also provide an opportunity for the District Court to consider factual questions relevant to petitioner's other claims. In addition to the lack of a jury trial, petitioner challenges several other aspects of the hearing that led to the renewal of his commitment. He claims he was denied effective assistance of counsel, and he was denied the opportunity to be present and to confront the State's witnesses. These claims are tied inextricably to the

hearing on the petition for renewal of commitment. *Buchanan v. State*, 41 Wis. 2d 460, 164 N. W. 2d 253 (1969). In rejecting the equal protection claim, the court relied on distinctions so elusive that, if they can support the discrimination at all, they will require further factual development at the remand hearing in this case. The jury question was also raised, but not decided, in *Hill v. Burke*, 289 F. Supp. 921 (WD Wis. 1968), aff'd, 422 F. 2d 1195 (CA7 1970).

[9] Tr. of Oral Arg. 22; Respondent's Supplemental Memorandum, filed Feb. 25, 1971, pp. 3–4. Compare the criteria for commitment in n. 4 with the criteria in n. 6, *supra*.

[10] *Baxstrom v. Herold, supra*, at 111; *Cross v. Harris*, 135 U. S. App. D. C. 259, 262, 418 F. 2d 1095, 1098 (1969); *Millard v. Harris*, 132 U. S. App. D. C. 146, 152, 406 F. 2d 964, 970 (1968).

question of possible waiver of rights at that hearing, a question that clearly requires further exploration on remand, see *infra,* at 514–517.

Petitioner also challenges the adequacy of the hearing that led to his initial commitment. The record shows that petitioner was not represented by counsel at that initial commitment, App. 11–12, and thus the question arises whether the state court ever in fact held the hearing required by *Huebner* and *Specht,* and now by statute as well. Moreover, petitioner claims that, even if there was such a hearing, it provided at most an opportunity to challenge the finding that he needed treatment, and not an opportunity to challenge the initial determination that his crime was sexually motivated, a determination that was a necessary prerequisite to the invocation of the whole commitment process. Respondent argues that any defect in the initial commitment has been rendered moot by the intervening renewal hearing.[11] It may be, however, that the initial commitment has continuing effects that cannot be remedied by a mere attack on the subsequent renewal order.[12] On remand, the District Court should resolve this threshold question of mootness, and if the Court determines that the merits of these claims are properly before it, then it should proceed to resolve the relevant factual and legal questions.

---

[11] See *State ex rel. Stroetz* v. *Burke,* 28 Wis. 2d 195, 136 N. W. 2d 829 (1965).

[12] For example, if petitioner can successfully challenge the initial finding that his crime was sexually motivated, then his commitment under the Sex Crimes Act would be improper even if he meets the statutory standards for continued commitment, *i. e.,* even if his discharge would be "dangerous to the public because of . . . mental or physical . . . abnormality." In that case, he could properly be committed only under the Mental Health Act, in accordance with its procedures and criteria for commitment, and its conditions of confinement.

Finally, petitioner challenges the place and character of his confinement under the Sex Crimes Act. He objects to the fact that he was committed to the state prison, rather than to a mental hospital, as he would have been under the Mental Health Act; and he contends that no treatment was provided at the prison, notwithstanding the fact that he was in a prison unit labeled "Sex Deviate Facility." These matters, in his view, deprived him of equal protection and due process. Respondent argues that this aspect of petitioner's claim has become moot, because (1) petitioner has been released on parole, see n. 2, *supra,* and (2) the State has established a new treatment facility at the state mental hospital, to which petitioner might be committed if his parole were revoked.[13] On remand, the parties will have ample opportunity to develop the facts relevant to the question of mootness, as well as to petitioner's substantial constitutional claims.

## II

Plainly, then, we cannot accept as a ground for decision the conclusion of the Court of Appeals that petitioner's claims are too frivolous to require a hearing. An alternative ground was relied on by the District Court, however, and respondent presses that argument here. The District Court held that petitioner had waived his constitutional claims by failing to present them properly to the state courts. In order to consider this argument, it will be necessary to review the somewhat complicated procedural history of this case.

Petitioner first sought to challenge the constitutionality of the Sex Crimes Act at the hearing on the State's petition to renew his commitment beyond the initial one-year period. His appointed counsel argued that

---

[13] See Brief for Respondent 28–30, and Appendix to Brief 140–156.

a new commitment order would constitute a prohibited second punishment for a single offense, and indicated that she was making a broad constitutional challenge to the Sex Crimes Act. The state trial judge adjourned the matter to permit the parties to brief the constitutional issues. When petitioner's counsel failed to submit a brief, or to take any further action on behalf of petitioner, the state court concluded that the bare petition of the Department of Public Welfare was sufficient to support an order continuing petitioner's confinement.[14] No appeal was taken from that order.[15]

Petitioner subsequently filed a petition for habeas corpus, without the assistance of counsel, in the Wisconsin Supreme Court, which at that time was the only state court authorized to grant habeas corpus relief to state prisoners.[16] The petition was summarily dismissed without a response from the State or an opinion by the court. While the petition is not in the record before us, both parties represent that it was substantially identical to the subsequent petition for federal habeas corpus that initiated the present proceedings.[17]

The federal petition, also prepared without the as-

---

[14] The state court relied largely on petitioner's failure to introduce any evidence in his behalf. In this connection it is noteworthy that the record does not show any evidence introduced by the State, either; moreover, under Wisconsin law, the State has the burden of proof in such proceedings. *Goetsch* v. *State*, 45 Wis. 2d 285, 172 N. W. 2d 688 (1969) (decided after the commitment hearing in this case).

[15] An appeal is authorized by Wis. Stat. Ann. § 975.16, formerly Wis. Stat. Ann. § 959.15 (16).

[16] Wis. Stat. Ann., c. 292 (1958), which has been replaced by a comprehensive post-conviction review statute, Wis. Stat. Ann. § 974.06 (1971).

[17] On remand, the District Court will have the opportunity to ascertain precisely what claims were presented in the state habeas petition.

sistance of counsel, alleges, in addition to the claim of double jeopardy, a claim that petitioner was denied equal protection and due process, referring specifically to, *inter alia,* the lack of a jury trial, and confinement in the state prison.

The District Court held that the failure of petitioner's trial counsel to file a brief in the state trial court amounted to a deliberate strategic decision to abandon petitioner's constitutional claims; it justified the Wisconsin Supreme Court's denial of post-conviction relief; and it operated as a bar to federal relief as well. We cannot agree with respondent or the District Court that the present record shows the deliberate bypass of state remedies that might bar federal consideration of petitioner's claims. We conclude, however, that respondent should be given an opportunity to develop the relevant facts. Accordingly, the case must be remanded for an evidentiary hearing on this point, as well as on the merits of such claims as may be ripe for federal determination.

This Court has repeatedly made it plain that not every state procedural default bars federal habeas corpus relief. Title 28 U. S. C. §§ 2254 (b), (c), which require a state prisoner to exhaust available state remedies, are limited in their application to those state remedies still open to the habeas applicant at the time he files his application in federal court. *Fay* v. *Noia,* 372 U. S. 391, 434–435 (1963); see *Picard* v. *Connor,* 404 U. S. 270, 272 n. 3 (1971). In this case it appears that petitioner has met the requirements of the exhaustion rule, inasmuch as no direct appeal is presently available to him, and he has taken his claim for post-conviction relief to the highest state court.[18]

---

[18] There is, of course, no requirement that petitioner file repetitious applications in the state courts. *Wilwording* v. *Swenson,* 404 U. S. 249 (1971); *Brown* v. *Allen,* 344 U. S. 443, 448 n. 3 (1953). The

This Court has also held, however, that a federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts, on the ground that in so doing he has forfeited his state court remedies. *Fay v. Noia, supra,* at 438–439. But such a waiver must be the product of an understanding and knowing decision by the petitioner himself, who is not necessarily bound by the decision or default of his counsel. An evidentiary hearing will ordinarily be required before the District Court can determine whether petitioner made a deliberate strategic waiver of his claim in state court. In this case, a hearing is necessary to determine (1) the reason for counsel's failure to file a brief or to take further action in the state courts, and (2) the extent of petitioner's knowledge and participation in that decision. If the District Court cannot find persuasive evidence of a knowing and intelligent waiver on the part of petitioner himself, then the Court should proceed to consider petitioner's constitutional claims.

The judgment is reversed and the case is remanded to the District Court for further proceedings in accordance with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

---

question on remand is whether any of petitioner's claims is so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim; and if so, whether there is presently available a state forum in which he can effectively present the claim.

Moreover, some or all of petitioner's claims may be entitled to be treated as claims for relief under the Civil Rights Act, 42 U. S. C. § 1983, in which case no exhaustion is required. *Wilwording* v. *Swenson, supra.*