Order, Supreme Court, Bronx County (Mary Ann BriganttiHughes, J.), entered June 11, 2009, which, to the extent ap *444 pealed from, granted the petition to retain respondent at the Montefiore facility, affirmed, without costs.
Although respondent’s release from the hospital has rendered this appeal moot as to her, we address the merits pursuant to the exception to the mootness doctrine for issues likely to recur (see Mental Hygiene Legal Servs. v Ford, 92 NY2d 500, 505-506 [1998]).
The main issue before us is whether the emergency room psychiatrist who treated respondent properly made an application pursuant to Mental Hygiene Law § 9.27 for her involuntary admission to a hospital, when such involuntary admission could also have been made pursuant to Mental Hygiene Law § 9.39. We hold that although section 9.39 provides for emergency involuntary admissions, it does not preclude applications by emergency room psychiatrists for nonemergency involuntary admissions pursuant to section 9.27. The trial court’s determination that respondent could have been involuntarily admitted under section 9.39 does not alter the fact that her admission pursuant to section 9.27 was proper.
Petitioner asserts, without contradiction, that section 9.27 has for years been relied on by hospitals for this type of admission. The crux of the problem is that while there are different admission standards as well as different retention periods, there are overlapping elements between the two sections. A close reading of each section shows how, in some cases, a patient could meet the criteria of both.
In section 9.39, entitled “Emergency admissions for immediate observation, care and treatment,” two criteria must be met for admission. The patient must have a mental illness for which “immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others” (§ 9.39 [emphasis added]). Section 9.01 defines the likelihood of resulting in serious harm as
“(a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or
“(b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.”
Moreover, as respondent has conceded, there must a present need for such immediate observation and treatment under section 9.39 (see Matter of Boggs v New York City Health & Hosps. Corp., 132 AD2d 340, 362 [1987], appeal dismissed 70 NY2d *445 972 [1988]), as manifested by a recent homicidal or suicidal threat, attempt or act (see Mem of Off of Mental Health, 1985 Session Laws of NY, at 3064 [accompanying enactment of L 1985, ch 343]).
Admission under section 9.27, on the other hand, allows admission of an individual who is mentally ill and “in need of involuntary care and treatment.” Although not specifically set forth in section 9.27, for a hospital to involuntarily admit a patient for psychiatric treatment, there must also be a showing, by clear and convincing evidence, that “the patient poses a substantial threat of physical harm to himself and/or others” (New York City Health & Hosps. Corp. v Brian H.. 51 AD3d 412, 415 [2008]).
Both sections thus permit the involuntary admission of a patient for care and treatment where the patient poses a threat of harm to himself or others. Although section 9.39 requires the additional element of recent suicidal or other violent behavior, the nature of the illness may be such that the patient could, at the time of the admission, evidence “other conduct demonstrating that [s]he is dangerous to [her]self.” Both sections also provide that a patient admitted to a facility must be examined by a psychiatrist from that facility.
The mere fact that a patient is brought into an emergency room for initial treatment of a mental illness does not, by itself, make it an emergency admission within the meaning of section 9.39. It is the condition of the patient, not the location or the circumstances of the admission, that determines which section of the Mental Hygiene Law controls the patient’s involuntary admission.
There is no issue that respondent, upon presentation to the emergency room, met the requirements of sections 9.27 and 9.39. Here, respondent was, inter alia, psychotic, disrobing in public and incoherent. The record does not show that the examining physicians classified her actions as “likely to result in serious harm,” the hallmark requirement of admission under section 9.39. However, the physician certifications utilized in her admission contained the following preprinted language: “[A]s a result of his or her mental illness, this person poses a substantial threat of harm to self or others (‘substantial threat or harm’ may encompass [i] the person’s refusal or inability to meet his or her essential need for food, shelter, clothing, or health care, or [ii] the person’s history of dangerous conduct associated with noncompliance with mental health treatment programs).”
While respondent clearly met the criteria of a mentally ill person in need of involuntary care and treatment pursuant to *446 section 9.27, there is no evidence in the record of affirmative, overt conduct on her part, at the time of her admission, that would constitute suicidal or other violent behavior, as defined in section 9.39. However, her actions, particularly with respect to disrobing in public, could constitute “other conduct demonstrating that the person is dangerous to . . . herself,” as well as a “substantial risk of physical harm” to herself (§ 9.01).
The dissent argues that the Legislature could not have intended for these sections to be used interchangeably, and the statutory scheme must thus be harmonized to carry out the legislative intent. But as the dissent acknowledges, the statute provides different criteria for involuntary admission under each section. There is no legislative intent that these sections be used interchangeably, although there may well be situations, as here, where the admission standards overlap and the patient meets the criteria of both.
The issue that appears to trouble the dissent is that section 9.39 provides for a much shorter involuntary commitment period before judicial review than that authorized by section 9.27. The nature of an involuntary admission under either section is per se a serious restriction of one’s liberty (see Project Release v Prevost, 722 F2d 960, 971 [2d Cir 1983]).
Recognizing this fact, the statutory scheme provides that upon admission by medical certification under section 9.27, the director of the medical facility must “forthwith” provide notice to the mental hygiene legal service (§ 9.29 [a]), thus triggering immediate legal representation for the patient. In addition, the director must provide to the nearest relative—and up to three additional persons as designated by the patient—notice of the patient’s rights, including the right to a hearing, not later than five days after admission (§ 9.29 [b]). The patient, either personally or through another, may seek judicial intervention to challenge his or her confinement at any time, and such hearing must be held within five days of the request, unless the applicant consents to a longer period of time (§ 9.31). Of note is the fact that section 9.31 applies to both sections 9.27 and 9.39.
The statutory scheme of Mental Hygiene Law article 9 already takes into account the differences in the duration a patient can be involuntarily retained before judicial intervention is mandated. While the dissenting opinion is premised on the assumption that the statutory scheme involving sections 9.27 and 9.39 needs to he harmonized, it in fact would restrict the discretion of the admitting physicians to determine which section best meets the needs of the individual patient requiring psychiatric treatment. It is not for the courts to impose restric *447 tions that do not otherwise exist, and which the Legislature has not seen fit to impose (see People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995]).
Simply put, when the statutory scheme of article 9 is read as a whole, it is clear that the Legislature has already adequately addressed the patient’s due process and liberty interests.
Respondent also contends that unlike the other persons authorized by the statute to execute an application for involuntary admission (see § 9.27 [b] [1]-[10]), an emergency room psychiatrist is not explicitly listed, and hence, was not a proper person to execute the application for her admission. We agree with the trial court’s determination that the Jacobi Medical Center emergency room psychiatrist who executed the application for involuntary admission of respondent to Montefiore North Medical Center was “a qualified psychiatrist who [was] . . . treating [respondent] for a mental illness,” and thus was authorized to make the application (see § 9.27 [b] [11]). The absence of an established treatment relationship notwithstanding, the emergency room psychiatrist was “treating” the individual within the meaning of the statute. Concur—Friedman, J.E, Sweeny, Richter, JJ.
Freedman and Abdus-Salaam, JJ, dissent in a memorandum by Abdus-Salaam, J., as follows: The issue presented here is whether an emergency room psychiatrist properly made an application pursuant to Mental Hygiene Law § 9.27 for the involuntary admission to a hospital of respondent when such an involuntary admission could have been accomplished pursuant to Mental Hygiene Law § 9.39.1 conclude that where an individual with mental illness meets the involuntary admission standard of section 9.39, it is not proper to admit her pursuant to section 9.27. I would thus reverse the order of the trial court. On the morning of April 16, 2009, EMT personnel brought respondent to the emergency room at Jacobi Medical Center, relating that she was agitated, undressing in public, and making no sense. A Jacobi emergency room attending psychiatrist applied for respondent’s involuntary admission to another hospital, Montefiore (apparently because of an insurance issue). Two psychiatrists at Jacobi served as certifying physicians under section 9.27, determining that respondent was in need of involuntary care and treatment, and that because of her mental illness, she posed a substantial threat of harm to herself or others. Later that day, respondent was transferred from the Jacobi emergency room to Montefiore, where Dr. Willy Alexis admitted her for involuntary psychiatric treatment under section 9.27.
Five days after the admission, Dr. Alexis requested a court *448 hearing to determine whether respondent was in need of involuntary hospitalization, and Dr. Carlos Rueda, the director of the psychiatric department at Montefiore, applied for court authorization to retain her for a period of 30 days. At the hearing, Dr. Alexis testified that respondent was bipolar, manic with psychotic features, potentially belligerent and assaultive, and concluded that she could pose a threat to others. He did not expect her to get better immediately, and planned to treat her by upgrading her medications to the maximum dose. His plan after discharge was to refer her to her private treating psychiatrist. After a hearing, the trial court ordered respondent to be retained for 30 days. The motion by Mental Hygiene Legal Service (MHLS) to dismiss the retention proceeding on the ground that the involuntary admission was not authorized under section 9.27 was denied.
Article 9 of the Mental Hygiene Law governs involuntary admissions to psychiatric facilities. The standards and procedures of article 9 have been held to meet federal constitutional due process requirements (see Project Release v Prevost, 722 F2d 960 [2d Cir 1983]).
Section 9.27, entitled “Involuntary admission on medical certification,” provides, in its opening sentence, that the director of a hospital may “receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, accompanied by an application for the admission of such person.” “ ‘[I]n need of involuntary care and treatment’ means that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment” (§ 9.01). The application initiating the involuntary admission process must contain a statement of facts, sworn by the applicant, upon which the allegation of mental illness and the need for care and treatment are based (§ 9.27 [c]). The statute lists in section 9.27 (b) appropriate applicants, which include, inter alia, family members, any person with whom the person resides, the director of community services or a social services official, and “a qualified psychiatrist who is either supervising the treatment of or treating such person for a mental illness in a facility licensed or operated by the office of mental health” (§ 9.27 [b] [11]). The application at issue here was made pursuant to subdivision (b) (11), pertaining to a qualified psychiatrist.
After the application has been made, two examining physicians must certify that the person is mentally ill and in need of *449 involuntary care (§ 9.27 [a]). The person is then brought to a hospital, where he or she is examined by a member of the hospital’s psychiatric staff who determines whether the person requires involuntary care and treatment and admission to the facility (§ 9.27 [e]). The hospital may retain a person admitted under this procedure for a maximum of 60 days without court authorization (§ 9.33).
At any time during that 60-day period, the patient, a relative or friend, or MHLS may request a hearing addressing the necessity of involuntary confinement and the initial admission (§ 9.31 [a]). At that hearing, the hospital bears the burden of demonstrating, by clear and convincing evidence, that the patient is “mentally ill and in need of continued, supervised care and treatment, and that the patient poses a substantial threat of physical harm to h[er]self and/or others” (Matter of Ford v Daniel R., 215 AD2d 294, 295 [1995]). If the director of a hospital determines that a patient admitted under section 9.27 requires inpatient treatment beyond 60 days, the director may apply for a court order for further retention (§ 9.33 [a]).
Section 9.39, entitled “Emergency admissions for immediate observation, care and treatment,” opens with an authorization for the director of any hospital to receive and retain as a patient for a period of 15 days “any person alleged to have a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others.” “Likelihood to result in serious harm” is defined as a “[1] substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or [2] a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm” (§ 9.39 [a]).
No application is required to admit an individual pursuant to section 9.39. Rather, admission follows an examination performed by the hospital’s staff physician who determines that the person meets the standard for emergency hospitalization (§ 9.39 [a]). However, to extend the hospitalization beyond 48 hours, a hospital staff psychiatrist must confirm the admitting physician’s determination that the patient requires immediate hospitalization (id.). At any time during the 15-day retention period, the patient, a friend or relative, or MHLS may request a hearing to determine whether there is reasonable cause to believe that immediate observation, care and treatment is needed (id.).
*450 There are differences between the admission standards and processes under sections 9.27 and 9.39, as well as different retention periods. An admission under section 9.27 requires only that the individual be “in need of involuntary care and treatment,” while the standard under section 9.39 is that the individual require “immediate observation, care and treatment” (emphasis added). Section 9.27 contemplates involuntary retention where an individual’s mental illness “manifests itself in neglect or refusal to care for himself, where such neglect or refusal presents a threat of substantial harm to his own well-being” (Matter of Scopes, 59 AD2d 203, 205 [1977]), whereas section 9.39 “do[es] not rely solely on medical diagnosis, but instead require[s] that the potential for serious harm be objectively ‘manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that [the patient] is a danger to himself . . . [or] by homicidal or other violent behavior’ ” (Project Release v Prevost, 551 F Supp 1298, 1305 [ED NY 1982], affd 722 F2d 960 [1983]). Although only two physicians must examine the patient under section 9.39 in contrast to the three physicians required under section 9.27, a patient may be retained without judicial review for a maximum of 15 days under section 9.39 (a) in contrast with the 60-day period under section 9.27. While section 9.39 pertains to “Emergency admissions,” there is no such language in section 9.27.* The trial court properly rejected respondent’s argument that an emergency room psychiatrist does not provide treatment for or supervise treatment of a mentally ill individual pursuant to section 9.27, and that accordingly, such a psychiatrist is not a proper applicant under section 9.27 (b) (11). A plain reading of the statute does not reveal any intent by the Legislature to exclude an emergency room psychiatrist from the applicants listed in section 9.27 (b). In fact, the legislative history accompanying the amendments to article 9 expresses a desire to broaden the scope of those who can apply for admission under section 9.27 (see Mem of Off of Mental Health, 1985 McKinney’s Session Laws of NY, at 3064-3065 [accompanying enactment of L 1985, ch 343]). However, the trial court erred in hold *451 ing that although respondent could have been involuntarily admitted under section 9.39, she was also properly admitted under section 9.27. The statutory scheme can only be harmonized if, when an individual meets the admission standards of section 9.39, an emergency room psychiatrist uses the procedures therein to admit that individual, and not the non-emergency procedures set forth in section 9.27.
When an emergency room psychiatrist obtains an involuntary admission under section 9.27 for an individual who meets the standards set forth in section 9.39, this bypasses the stringent short-retention period included in section 9.39. Given that involuntary commitments entail “a massive curtailment of liberty” (Vitek v Jones, 445 US 480, 491 [1980], quoting Humphrey v Cady, 405 US 504, 509 [1972]), the Legislature could not have intended that sections 9.27 and 9.39 be used interchangeably, as this would result in arbitrarily different retention periods depending on which provision the physician chooses to use for admission. The majority points out that under section 9.31, the patient has the right to challenge his or her confinement at any time and that such a hearing must be held within five days of the request. However, this does not address the fact that where a patient does not request a hearing, section 9.39 provides for a much shorter involuntary commitment period before judicial review.
Finally, petitioner’s argument that hospitals have been admitting patients pursuant to section 9.27 under similar circumstances for years does not require this Court to place its imprimatur on a custom and practice that treats these different statutes as if they are the same. The record shows that respondent was psychotic, was disrobing and required restraints. She thus qualified for admission under section 9.39, and should have been committed pursuant thereto.
While respondent argues that sections 9.27 and 9.39 have a “muddled past” and that overlapping judicial interpretations make it impossible to divine an overall statutory scheme within article 9, statutory provisions “relating to the same subject matter must be construed together unless a contrary legislative intent is expressed, and courts must harmonize the related provisions in a way that renders them compatible” (Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]). Sections 9.27 and 9.39 are in accord only if emergency room psychiatrists use the procedures of section 9.39 to admit emergency room patients who qualify for admission under that statute, and do not use the non-emergency provisions of section 9.27 for such patients.
*452 In sum, respondent had a right to benefit from the heightened admission standard and shorter retention period attached to section 9.39. Once the patient is properly admitted, the director of the hospital, or a qualified psychiatrist who is treating her (§ 9.27 [b] [11]) could then apply for her admission/retention for 60 days pursuant to section 9.27. This is the proper procedure in such instances (see e.g. New York City Health & Hosps. Corp. v Brian H., 51 AD3d 412 [2008]; Matter of Boggs v New York City Health & Hosps. Corp., 132 AD2d 340 [1987], appeal dismissed 70 NY2d 972 [1988]), and it should have been followed here.

 The statute also includes another section involving emergency admissions. Section 9.57, entitled “Emergency admissions for immediate observation, care and treatment; powers of emergency room physicians,” specifies the powers of emergency room physicians for emergency admissions pursuant to section 9.39 where the hospital does not have an inpatient psychiatric service. In that instance, a physician is authorized to request the director of ,the hospital to direct the removal of a person to á hospital with an inpatient psychiatric service, where that person may then be admitted in accordance with the provisions of section 9.39.